In re THOMPSON'S WILL.

(Supreme Court, Appellate Division, Second Department. October 27, 1911.)

WILLS (§ 82*)—VALIDITY—ABSENCE OF PROVISION FOR WIFE.

Where testator made a will prior to his second marriage, and it was not pretended that he was then incompetent, or that the will did not express his true intent toward his children and blood relatives, or that

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

they were not then the natural and exclusive objects of his affection and bounty, probate would not be denied because it contained no provision for a woman whom he married nearly two years after its execution, and who had been his wife but four months and eleven days when he died.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 203; Dec. Dig. § 82.*]

Appeal from Surrogate's Court, Kings County.

Application for the probate of the alleged last will of Robert H. Thompson, deceased. From a decree denying probate, the executors and residuary legatees appeal. Reversed, with directions.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, WOODWARD, and RICH, JJ.

John J. Crawford and Charles F. Brown, for appellants.
Jesse Fuller, Jr., for respondent.

RICH, J. This is an appeal from a decision of the surrogate of Kings county denying probate to an instrument offered as the last will and testament of Robert H. Thompson, deceased. The appellants are the son and two grandchildren and adopted children of the deceased.

On February 14, 1910, the deceased married the respondent, who had for several years been in the employ of a corporation of which he was the president. A former wife of the deceased died some time prior to the 19th day of June, 1908, the time when the instrument offered for probate was executed. It appears that the deceased was interested in Spiritualism, and about a year after his wife's death commenced to urge his adopted daughter to see if she could not get into communication with the spirit of his deceased wife. She testifies that at the repeated solicitation of her grandfather she would put her mind in a passive state, the deceased would ask questions of his deceased wife, and if the daughter had an impression, indicating to her mind an answer to such questions, she would write it out and give it to him. Quite a number of these writings the deceased caused to be copied in a book, and they, with others, were introduced in evidence upon the hearing. The learned surrogate has found, and the finding is predicated upon these writings, that there was a conspiracy between the adopted children of the deceased, and that their acts were fraudulent, and constituted undue influence; that the instrument offered for probate was the product of such conspiracy, fraud, and undue influence, and was void.

It is clearly established that the deceased had formulated his plans for the disposition of his estate some time before the alleged communications, and had executed the will in question. It is not contended that he was not of sound and disposing mind and memory when his will was executed. Upon the contrary, it is stipulated that he "retained his faculties for business, and that those faculties were good" up to and beyond the time he executed his will; and the learned surrogate announced, near the close of the testimony:

"I shall find that the decedent was in the maturity of his powers as a good, strong business man; and, in the absence of any proof to the contrary,

I shall find that he maintained those powers which he had as to the ordinary affairs of life."

I am unable to find anything in the evidence warranting the conclusion that the communications to the deceased had any influence upon the testator in making his will. He does not seem to have regarded such communications as of a divine origin, because in many cases where the language did not please him he changed it to conform to his views before having it copied. There is no reference in any of the communications to the respondent, and there are but two expressions that can by the wildest stretch of imagination be said to furnish any basis for her contention. One is that the testator should not marry again. Concededly he was not influenced by this, because he did marry. And the other is that, if he was going to marry, he should provide for the children first. There is no evidence that deceased contemplated marriage when the will was executed. It is not intimated that the will does not express the true intent of the testator towards his children and blood relatives at the time it was executed, or that they were not then the natural and exclusive objects of his affection and testamentary duty and intent, and the sole ground upon which the will is challenged is that it contains no provision for the woman whom the testator married nearly two years after its execution. She had been his wife but four months and eleven days when he died.

It seems to me that there is an entire failure of proof on the part of the contestant, and that the decree of the surrogate ought to be reversed, and the issues ordered to be tried by a jury, with costs of the appeal to abide the event of the new trial, payable out of the estate. All concur.